## Valley Greene Associates v. The Board of Supervisors of Tredyffrin Township

*William R. Hagner,* for plaintiff.

*John S. Halsted,* for defendant Planning Commission of Tredyffrin Township.

*William H. Lamb,* for defendant Tredyffrin Township.

GAWTHROP, *J.,* February 17, 1983—Valley Greene Associates (Valley Greene) here challenges the Tredyffrin Township Zoning Ordinance (Ordinance), asserting that it has an exclusionary effect upon two bases: that it fails to provide for the township's "fair share" of twin housing, and that it imposes undue restrictions where such housing is permitted. Upon consideration of the entire record of this case, the briefs of counsel, and our own independent research, we conclude that Valley Greene has failed to prove that the ordinance works such an exclusionary result, and thus we deny the appeal.

In January, 1982, Valley Greene applied for a curative amendment to the Ordinance to permit construction on a 24.43-acre tract of 90 twin houses

with a minimum lot size of 3,000 square feet. At the time of application, Valley Greene was equitable owner of the property, then zoned R1/2, where the only permitted residential use was as a single-family detached dwelling with a 100,000 square foot minimum lot size. Valley Greene argued that the Ordinance failed adequately to provide for twin housing and that the 10,000 square foot minimum lot size required for each twin unit was unreasonable. After hearings, held on four evenings, the board denied Valley Greene's application, and found that: (1) the ordinance did not exlude twin dwellings; (2) the township was then providing its "fair share" of multi-family housing in the form of apartments, twins, and townhouses; and (3) a need for twin dwellings had not been established. Valley Greene timely filed this appeal challenging the validity of the township's zoning ordinance.

Valley Greene's position, in essence, is that twins are allowed only in R-4 districts, that there is demand for twins in Tredyffrin Township, that the land available for development in R-4 districts is miniscule, and thus, the township has failed to provide its "fair share" of the area's demand for twin housing.[1] The township argues that twins are al-

---

[1] The township zoning officer testified that the Ordinance requires only 5,000 square feet per unit, or 10,000 square feet per structure. The ordinance, however, plainly states otherwise. Each building in an R-4 district used as a single-family dwelling must have a lot of at least 10,000 square feet. The Tredyffrin Zoning Ordinance of 1939, as amended, Chapter IX of Ordinance No. HR-35, the Code of Ordinances of the Township of Tredyffrin ("Ordinance"), § 1002.A.1. A twin is defined as: "A building . . . occupied exclusively as a residence for only one family . . ." Ordinance §201 B.10.c. Thus, each twin unit, under the Ordinance, required 10,000 square feet for a maximum density of 4.3 units per acre. We find that Valley Greene failed to show that this is an unreasonable mini-

lowed in the R-4 and OA districts, that there is no demand for twin housing and that the Township provides its fair share of the area's need for low and moderate income housing by permitting apartments, townhouses, and twins.

As we took no additional evidence in this matter, we must consider whether or not the Board committed an abuse of discretion or error of law in denying Valley Greene's application. Villa, Inc. v. Zoning Hearing Board, Old Forge Township, 57 Pa. Commw. 221, 426 A. 2d 1209 (1981). In challenging the Ordinance, Valley Greene must overcome the presumption that the Ordinance is valid and has the heavy burden of proving clearly and unmistakably that the zoning ordinance is unconstitutional. Schubach v. Silver, 461 Pa. 366, 380-81, 336 A. 2d 328 (1975). As the Commonwealth Court has stated: "This is especially so where the ordinance is being challenged because it has an alleged exclusionary effect even though it may not be exclusionary on its face." Kaiserman v. Springfield Township, 22 Pa. Commw. 280, 290, 348 A. 2d 467 (1975). Our analysis is guided by the method set forth in Surrick v. Zoning Hearing Board of Upper Providence Township, 476 Pa. 182, 382 A. 2d 105 (1977), for determining whether the ordinance effects an unconstitutional exclusion.

The first question is whether Tredyffrin Township is a logical area for development and population increase. The township is traversed by two major highways, is seven miles from a Pennsylvania Turnpike exchange, and is 20 miles from Philadelphia, to

---

mum lot size. See: Martin v. Township of Millcreek, 50 Pa. Commw. 249, 413 A. 2d 764 (1980). See also: Caste v. Zoning Hearing Board of Whitehall Borough, 70 Pa. Commw. 368, 453 A. 2d 69 (1982).

which it is linked by a commuter rail line. The population of Chester County, 277,746 in 1970, is projected to increase 26 percent by the year 2,000, to approximately 351,000. Although the township's population decreased slightly in the 1970's an increase of up to 18 percent is projected between 1980 and the year 2000. The township concedes that it has been and is in the path of suburban growth.

The next question to ponder is the present level of development within the community. Factors to be considered are the percentage of total undeveloped land, the percentage of land available for development as multi-family dwellings, and the number of additional dwelling units which can be accommodated under the existing zoning regulations. See: Surrick v. Zoning Hearing Board of Upper Providence Township, supra, 382 A. 2d at 110; Appeal of Silver, 35 Pa. Commw. 569, 387 A. 2d 169, 171 (1978). The total area of the township is 12,800 acres, of which 2,777, or 21.7 percent, are vacant. Valley Greene argues vigorously and at length that this figure is inaccurate because it fails to take into account that not all of the land is usable. Some of the acreage, contends Valley Greene, would be dedicated to streets, rights of way, and open space, and on some land construction is prohibited because of flood plains and steep slopes. Whether flood plains, steep slopes, or rights of way render a particular site less suitable for development, however, is not a relevant consideration in determining the constitutionality of a zoning ordinance. Villa, Inc. v. Zoning Hearing Board, Old Forge Township, supra, 426 A. 2d at 1212.

There are three districts in the township where multi-family dwellings are permitted: PA, a 44-acre area, OA, 441 acres, and R-4, 198 acres. The only

vacant land, however, is in the R-4 district, where 56.5 acres are available, and OA, where 100.5 acres may be developed. This is a total of 5.6 percent of the vacant land. Using the highest projected population increase presented to the Board, and assuming a household of 2.8 persons, the average size of the township's household in the 1980 census, the township shall need an added 711 dwelling units by the year 2000.

Valley Greene contends that twins are permitted only in the R-4 District. We agree. The Ordinance defines a twin as a building with a single party wall, occupied by one family. Ordinance §201.B.10.c. The township maintains that twins are permitted in the OA District as multi-family dwellings, and that the township has issued permits for twins in the OA District, relying on Appeal of George Miller, Jr., 66 Pa. Commw. 13, 444 A. 2d 786 (1981). There, the court found that twins were permitted in a multi-family district because the ordinance defined a multi-family dwelling as one having two or more units and stated that the definition was intended to include all types of structures with two or more units. Here, the township's ordinance specifically defines a multiple dwelling as one designed for three or more families. Ordinance §201.B.4. A twin, in contrast, is a single-family dwelling. Ordinance §201.B.10.c. The Tredyffrin definitions of twin and multiple-family dwellings are mutually exclusive, while the multi-family dwelling definition in Miller includes the definition of a twin dwelling. Hence, the Miller case is inapposite. Further, the township contends that it has, and thus will, issue permits to build twins in the OA District, that may not affect our decision here, which must be based upon what development the Ordinance permits as of right. What the Township may in practice permit is not

relevant to the constitutionality of the statute. See: Lower Gwynedd Twp. v. Provincial Investment Co., 39 Pa. Commw. 546, 395 A. 2d 1055, 1057 (1979); Appeal of Elocin, Inc., 66 Pa. Commw. 28, 34, 443 A. 2d 1333, 1337, n. 6 (1982).

We turn now to the number of additional dwelling units which can be accommodated under the present zoning scheme. If twins were to comprise one quarter of the township's expected need for dwellings, then 178 such units would be needed. If 50 percent of the R-4 acreage were developed to its maximum density of twins,[2] 282 twin units can be accommodated in the district, exceeding this projected demand.[3] If 100 of the 154 vacant acres in the OA district were developed to the maximum permitted density of multiple-family dwellings of 19.8 units per acre, then 1990 units could be accommodated. If the entire area of the other residential districts was used for single-family dwellings, a total of 1612 could potentially be built in the Township. See: Exhibit P.C. 1.

The third question we must consider is "whether the challenged zoning scheme effected an exclusionary result or, alternatively, whether there was some evidence of a 'primary purpose' or exclusionary intent to zone out the natural growth of population." Surrick, supra, 476 Pa. at 192-93, 382 A. 2d at 110. We find that there is no such exclusionary result or intent here. Twenty-five percent of the town-

---

[2] Each twin unit requires 10,000 square feet.

[3] In light of the ability of the Township to accommodate twin homes, we do not consider the extent of the factual demand for such housing. There was no evidence to suggest that the demand would outstrip the Township's potential to supply it. We note that in the 12 years preceding this matter, there were no applications to build twins nor to rezone any area for twins.

ship's current housing stock is multi-family dwellings, and 5.6 percent of its vacant land can accommodate more twin and multiple-family dwellings. On this land all of the township's potential housing needs can be met through construction of twins or multiple-family dwellings. We thus conclude that Tredyffrin Township has amply provided to meet its fair share of the area's housing needs. Cf: Caste v. Zoning Hearing Board of Whitehall, 70 Pa. Commw. 368, 453 A. 2d 69 (1982); In re Miller, supra; Warwick Land Development Corp. v. Board of Supervisors of Warwick Twp., 31 Pa. Commw. 450, 376 A. 2d 679 (1977).

## ORDER

Accordingly, for the foregoing reasons, the Appeal of Valley Greene Associates shall be and hereby is denied.